THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM GLASS COMPANY, INC.,<br><br>Defendant. | CASE NO. C11-1324-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's Motion to for Partial Summary Judgment (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and grants the motion for the reasons explained herein.

## I.    BACKGROUND

This case concerns a dispute over an insurance policy purchased by Defendant and Counterclaimant Spectrum Glass Company ("Spectrum") to cover losses it could incur defending itself in employment practices lawsuits. The relevant policy, issued by Plaintiff Travelers Casualty and Surety Company of America ("Travelers"), provided coverage for the defense of claims arising out of "Wrongful Employment Practices," which the policy defined to include discrimination, retaliation, harassment, and breach of employment agreement. (Policy, Dkt. No. 54-1 at 25.) The policy's exclusions limited Travelers' obligation to pay for the defense of claims

ORDER
PAGE - 1

alleging violations of laws "governing or related to the payment of wages"—i.e., wage-and-hour laws—to $100,000 of defense expenses, an exclusion labeled a "sublimit." (*Id.* at 10, 27.) The policy also required the parties to apportion defense expenses between wage-and-hour claims subject to the sublimit and any claims not subject to the sublimit. (*Id.* at 15-16.)

In June 2008, a Spectrum employee filed a class action lawsuit against Spectrum in King County Superior Court (the *Lettic* case). The complaint included seven claims for relief: (1) breach of contract, (2) violation of Washington's Minimum Wage Act, (3) violation of RCW 49.48.010, governing unpaid wages upon termination, (4) payment of wages "less than entitled" under RCW 49.46.090, (5) failure to provide meal and rest breaks under RCW 49.12.010, (6) willful refusal to pay wages under RCW 49.52.050, and (7) violation of the Consumer Protection Act, RCW 19.86. (Dkt. No. 21-2 at 10-20.) On June 23, 2008, Spectrum tendered the complaint in the matter to Travelers. (*Id.* at 37.)

Two days later, on June 25, 2008, Travelers sent a letter to Sue Davis at Spectrum stating that the *Lettic* matter "constitute[d] a claim within the meaning of the Policy" and that Travelers would extend a defense, subject to a reservation of rights. (*Id.* at 40-45.) The letter invoked two provisions excluding loss other than defense expenses: first, for claims under an express employment agreement or sums sought solely on the basis of a claim for unpaid services; and second, for alleged violations of wage-and-hour laws. (*Id.* at 43.) The letter did not explicitly state how those exclusions applied to the *Lettic* claims. Rather, it merely stated that the policy "limits the Company's obligations in this matter to afford a defense up to the maximum sublimit of $100,000.00." (*Id.* at 44.) Travelers' claims file indicates that its claims manager, William Thompson, spoke to Ms. Davis by telephone at least once on June 25th regarding the allegations in the complaint. (Dkt. No. 54-3 at 9.) The file also reflects that the following day, Mr. Thompson advised Ms. Davis by telephone that the $100,000 sublimit applied, and that Spectrum would be responsible for its own defense when the sublimit was exhausted. (*Id.* at 7.)

The *Lettic* litigation proceeded, and the sublimit was exhausted by August 2009

(Travelers made its final payment under the policy, for the August 2009 work, in December 2009). (Dkt. No. 21-1 at 31.) At that point, Travelers stopped defending the matter, and Spectrum assumed its own defense. On April 29, 2010, Spectrum requested that Travelers reexamine its coverage position on the grounds that the *Lettic* claims were not solely wage-and-hour claims. (Dkt. No. 21-2 at 68-70.) Kelly Kihlmire-Caudill, Travelers' senior claims counsel at the time, responded to Spectrum's request on June 8, 2010 by affirming the original conclusion that Travelers was obligated to cover no more than $100,000 of defense expenses. (*Id.* at 72-76.) Ms. Kihlmire-Caudill cited an exclusion not included in Travelers' initial letter of June 25, 2008: the exclusion of liability coverage, including defense expenses, for alleged violations of the Occupational Safety and Health Act (OSHA) or similar state statutes. (*Id.* at 75.) According to Ms. Kihlmire-Caudill, the claim for failure to provide meal and rest breaks was brought under a state statute similar to OSHA, and all liability coverage was therefore excluded. (*Id.*) She further wrote that in the alternative, the *Lettic* plaintiffs were seeking compensation—i.e., back wages—for Spectrum's alleged failure to provide meal and rest breaks, which brought that claim within the exclusion for wage-and-hour claims, and thus the sublimit. (*Id.* at 76.) The parties continued to exchange correspondence regarding this dispute into October 2010. In the meantime, Spectrum settled the *Lettic* case in August 2010, paying $220,000 to class members and $445,000 to their attorneys.

In July 2011, while still maintaining that its coverage position was correct, Travelers' counsel sent Spectrum a letter purporting to tender an additional payment of $125,000 "in recognition of the allocation provisions under the Policy." (Dkt. No. 54-15.) The letter did not offer further details as to how Travelers arrived at that amount or to which of the claims the payment was meant to apply. The actual payment was not made until August 16, 2011, after Travelers filed its Complaint in this matter. (Dkt. No. 21-2 at 129.) Travelers seeks a declaration that it has satisfied all of its legal obligations to Spectrum under the policy. (Dkt. No. 1.) Spectrum counterclaims for breach of contract, negligence, insurance bad faith, and violations of

1 the Consumer Protection Act. (Dkt. No. 12.) Spectrum now moves for partial summary judgment
2 on its counterclaim for insurance bad faith. (Dkt. No. 19.)

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### A.   Duty to Defend

The Washington Supreme Court has emphasized that the duty to defend is broader than the duty to indemnify. *See Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash. 2d 398, 404, 229 P.3d 693 (2010); *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash. 2d 55, 64, 1 P.3d 1167 (2000); *Kirk v. Mt. Airy Ins. Co.*, 134 Wash. 2d 558, 564, 951 P.2d 1124 (1998). The duty to indemnify arises "only if the policy *actually covers* the insured's liability," whereas "the duty to defend is triggered if the insurance policy *conceivably covers* allegations in the complaint." *Am. Best*, 168 Wash. 2d at 404 (emphasis in original). More specifically, "the duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wash. 2d 751, 760, 58 P.3d 276 (2002). Thus, unless a claim alleged in the complaint is "clearly not covered by the policy," an insurer is not relieved of its duty and must defend until it is clear that the claim is not covered. *Id.*; *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 53-54, 164 P.3d 454 (2007).

If the claims in a complaint are ambiguous, Washington courts construe them liberally in

favor of "triggering the insurer's duty to defend." *Truck Ins.*, 147 Wash. 2d at 760. Insurers must therefore do the same, and if it is unclear from the face of the complaint whether it implicates the duty, "the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Woo*, 161 Wash. 2d at 53 (emphasis in original). In the face of uncertainty as to whether the duty to defend has arisen, an insurer may defend under a reservation of rights and seek a declaratory judgment that it has no duty. *Truck Ins.*, 147 Wash. 2d at 761. In taking this route, however, the insurer must be cognizant that it has an "enhanced obligation of fairness toward its insured" because of the potential for conflicts of interest that is inherent in defending under a reservation of rights. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wash. 2d 903, 915 (2007).

### B. Bad Faith Refusal to Defend

Insurance bad faith is analyzed under traditional tort principles: duty, breach, proximate cause, and damages. *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 485, 78 P.3d 1274 (2003). In order to establish bad faith by an insurer, an insured must show that the insurer's breach of its duty to defend was unreasonable, frivolous, or unfounded. *Kirk*, 134 Wash. 2d at 560. Relevant to this inquiry is whether the insurer (1) thoroughly investigated the claims, (2) retained competent defense counsel, (3) apprised the insured of all developments related to the coverage and the lawsuit, and (4) refrained from engaging in "any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." *Dan Paulson*, 161 Wash. 2d at 915.

Spectrum argues that summary judgment is warranted because Travelers (1) failed to undertake an adequate investigation of the *Lettic* claims before determining that the entire matter was subject to the sublimit; (2) failed to explain its coverage position adequately; and (3) refused to defend Spectrum on unreasonable grounds.

#### 1. Travelers' investigation of the *Lettic* claims.

Washington law imposes a strict duty on insurers to conduct a reasonable investigation

of a claim. The Washington Supreme Court has emphasized the importance of the insurer's investigation, given that when an insurer fails to investigate, it places the insured "in the difficult position of having to perform its insurer's statutory and contractual obligations." *Coventry Associates v. Am. States Ins. Co.*, 136 Wash. 2d 269, 279, 961 P.2d 933 (1998). The *Coventry* court agreed with the notion that the duty of good faith "require[s] the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage." *Id.* at 281 (citing 1 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies and Insureds* § 2.05, at 38 (3d ed. 1995)); *see also Truck Ins.*, 147 Wash. 2d at 764 (breach of duty to defend was in bad faith where, *inter alia*, insurer recommended denial of coverage after having conducted little or no investigation).

Spectrum argues that three of the *Lettic* claims—those for breach of contract, failure to provide meal and rest breaks, and violation of the Consumer Protection Act—did not allege violations of wage-and-hour laws, but that Travelers "did not evaluate potential coverage for defense of the non-wage claims before denying a defense for them." (Dkt. No. 19 at 6.) Travelers counters that Mr. Thompson took numerous steps before determining that all of the *Lettic* claims were subject to the sublimit. Those included obtaining information from Ms. Davis and background on Mr. Lettic, reviewing Spectrum's insurance application and employee handbook, and analyzing the complaint and claims therein. (Dkt. No. 52 at 10-11.)

The record does not bear out Travelers' assertions as to Mr. Thompson's investigation. The initial letter to Spectrum was dated June 25, 2008. The claims file entry for that day begins with the statement that Mr. Thompson sent the letter to the insured. (Dkt. No. 21-2 at 51.) It then proceeds to mention his conversation with Ms. Davis and the fact that Spectrum's employee handbook is available for review. (*Id.*) Travelers offers no support for the notion that *any* investigation preceded its determination as to the applicability of the sublimit.

Regardless, the kind of investigation that would be germane to whether the *Lettic* claims were covered was less factual than analytical. Travelers was required to determine whether the

policy conceivably covered the allegations in the complaint. *See Am. Best*, 168 Wash. 2d at 404. The record establishes that Travelers did not do so until *after it had ceased providing a defense*. At its Rule 30(b)(6) deposition, Travelers' representative, Ms. Kihlmire-Caudill, testified that Travelers required its claims managers to assess coverage as to each claim or cause of action. (Dkt. No. 21-1 at 4.) Nonetheless, she was not aware of any claim-by-claim analysis of the *Lettic* causes of action and whether they were covered under the policy. (*Id.* at 9.) The "sum total of the evaluation or investigation" of the CPA claim was to look at the relief the plaintiffs sought. (*Id.* at 13.) Because the relief "looked like the other causes of action for failure to pay overtime and wages, we treated it as a wage and hour claim." (*Id.*) Travelers conducted no investigation of whether Spectrum had policies in place requiring meal and rest breaks, nor did it perform any analysis of remedies available to employees who are deprived of such breaks. (*Id.* at 19, 24.) Indeed, Travelers did not review the regulations cited in the *Lettic* complaint, nor did it analyze the applicability of the OSHA exclusion, until after April 2010, when Spectrum challenged its coverage determination. (*Id.* at 14-16.) At that point, Spectrum had been defending itself for eight months.

Travelers emphasizes this last part—that Spectrum did not object to the coverage determination for nearly two years after Travelers initially told Spectrum that the defense of the entire action would be subject to the sublimit. (Dkt. No. 52 at 14, 25-26.) But Travelers offers no authority for the subtext of that argument, which is that an insured's initial acquiescence in a coverage determination insulates the insurer from its duty to investigate. Such a proposition would not comport with settled Washington law recognizing insurers' enhanced duty when defending under a reservation of rights, *Dan Paulson*, 161 Wash. 2d at 915, and specifically the duty to investigate before denying coverage. *Coventry*, 136 Wash. 2d at 281. These duties flow from insurers' greater familiarity with their policies and exclusions, which are often labyrinthine and confusing to insureds. As Spectrum argues in reply, it cannot be faulted for relying on Travelers to perform its obligations under the policy in good faith. (Dkt. No. 55 at 4 n.4.) *See*

ORDER
PAGE - 7

*also Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008) ("[I]t is an insurer's affirmative duty to investigate a claim before it denies coverage, not the insured's duty to continue supplementing the record to an uninquisitive insurer.").

The Court therefore concludes that Travelers failed to undertake an adequate investigation of the *Lettic* claims before limiting its obligations to the sublimit and withdrawing its defense of Spectrum.

### 2. Travelers' explanation of its coverage position.

An insurer must "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim." WAC 284-30-330(13); *see also Truck Ins.*, 147 Wash. 2d at 764 (denial of defense, "based on a laundry list of exclusions without any analysis or correlation to the particular claims," supported finding of bad faith). Travelers acknowledges this obligation. (Dkt. No. 21-1 at 5, 6.)

Travelers' explanation for denying coverage beyond the sublimit, however, failed to comply with this requirement. The letter of June 25, 2008 merely listed the *Lettic* claims and relief sought, identified various policy provisions and two exclusions, and concluded summarily that the entire *Lettic* action was not covered beyond $100,000 in defense expenses. (Dkt. No. 21-2 at 40-45.) The letter did not analyze coverage at all, let alone analyze coverage as to particular claims. Moreover, the coverage determination did not proceed logically from the exclusions cited in the letter. The first exclusion cited—for loss other than defense expenses for claims under an express employment agreement—was not subject to the $100,000 sublimit. (*Id.* at 8, 43.) The second exclusion—for loss other than defense expenses for wage-and-hour claims—was subject to the sublimit. (*Id.*) Thus, mentioning both exclusions suggested strongly that one or more of the *Lettic* claims potentially required Travelers to provide a defense beyond the sublimit. But Travelers, inexplicably and without any analysis whatsoever, determined that it was not obligated beyond the sublimit. Travelers provided no further explanation for its coverage position until June 2010—again, after it had stopped defending Spectrum.

1    Travelers' June 2010 letter was also deficient as a response to Spectrum's request that
2 Travelers reexamine its coverage position. In citing the exclusion for violations of OSHA or
3 related state statutes, Travelers offered a wholly new basis for excluding any coverage
4 whatsoever of the claim for failure to provide meal and rest breaks. (Dkt. No. 21-2 at 75.) To the
5 extent that Travelers was relying on this exclusion, it had failed to so apprise Spectrum, a further
6 hallmark of bad faith. *See Dan Paulson*, 161 Wash. 2d at 915; *see also Hayden*, 141 Wash. 2d at
7 63 (when an insured is prejudiced by insurer's failure to raise all grounds for denial in its initial
8 coverage letter, insurer is estopped from later raising additional grounds). The letter did not
9 evaluate coverage for the breach of contract or CPA claims. Notably, it also omitted any
10 reference to the exclusion related to claims under an express employment agreement, which, as
11 explained above, was inconsistent with the conclusion that Travelers had no obligations beyond
12 the sublimit. The stark differences between the June 2008 and June 2010 letters reinforce the
13 conclusion that Travelers had failed to analyze or investigate the *Lettic* claims before terminating
14 its defense of Spectrum.

15             **3. Travelers' basis for denial of a defense beyond the sublimit.**

16    Spectrum argues that Travelers denied a defense of the breach of contract, break, and
17 CPA claims without a valid basis. As set forth above, Travelers had a duty to defend Spectrum if
18 the insurance policy conceivably covered the allegations in the *Lettic* complaint, construed
19 liberally. *See Truck Ins.*, 147 Wash. 2d at 760; *Woo*, 161 Wash. 2d at 53-54. Indeed, to the extent
20 that the claims were conceivably covered, Travelers should have defended Spectrum until it was
21 clear that the *Lettic* claims were not covered. *See Am. Best*, 168 Wash. 2d at 405.

22             **a. Breach of contract claim.**

23    As explained above, the initial letter of June 2008 did not undertake a claim-by-claim
24 analysis of the *Lettic* lawsuit. Rather, it merely applied the wage-and-hour exclusion and the
25 $100,000 sublimit across the board. Travelers' claims file also does not analyze the causes of
26 action separately, but merely notes the "$100k sublimit for wage and hour claims." (Dkt. No. 54-

3 at 9.) Thus, Travelers decided without explanation that to the extent the breach of contract claim was covered under the policy, it was subject to the sublimit.

Spectrum argues that the breach of contract claim was potentially covered beyond the sublimit, and the Court agrees. The *Lettic* complaint alleged that Spectrum's employee handbook constituted an implied employment agreement that Spectrum breached by failing to pay employees for time worked, holidays, and meal and rest breaks. (Dkt. No. 21-2 at 14-15.) Although the breach of contract claim sought unpaid wages as damages, it did not allege a violation of a wage and hour law as defined in the policy; rather, it alleged common law breach of contract. It is therefore perfectly conceivable that the breach of contract claim was not a wage-and-hour claim and was not subject to the sublimit. Indeed, Travelers correctly acknowledged during its Rule 30(b)(6) deposition that the common law of contract does not fit within the policy definition of a wage-and-hour law. (Dkt. No. 21-1 at 9.) It also stated that the exclusion it apparently had relied upon in refusing to provide coverage for the breach of contract claim—the exclusion for breach of an express employment agreement or for claims for unpaid services—was not subject to the sublimit. (*Id.* at 9-10.) Thus, because the breach of contract claim was at least *potentially* covered, Travelers breached its duty to Spectrum when it ceased providing a defense in August 2009 without having determined conclusively that the claim was *not* covered.

Travelers cites the moral hazard inherent in insuring against the violation of the law: if an insured could commit such violations secure in the knowledge that it would be compensated by its insurer, statutory protections for workers would be undermined. (Dkt. No. 52 at 15-16.) The Court is sensitive to this moral hazard, but the fact remains that on the face of their complaint, the *Lettic* plaintiffs were alleging something else: breach of an implied agreement.[1] Travelers

---

[1] In a footnote, Travelers cites RCW 49.52.050 for the notion that refusal to compensate employees as required by law or contract constitutes a misdemeanor. (Dkt. No. 52 at 20 n.12.) Without stating so explicitly, Travelers suggests that this statute implicates the moral hazard principle and brings the breach of contract claim under the sublimit. What Travelers fails to mention is that RCW 49.52.050 requires proof that the employer withheld the wages "willfully

ORDER
PAGE - 10

was not entitled to ignore the breach of contract claim or simply assume that it duplicated the wage-and-hour claims. *See Indus. Indem. Co. v. Kallevig*, 114 Wash. 2d 907, 917, 792 P.2d 520 (1990) ("An insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denies coverage based upon suspicion and conjecture."). To the contrary, Travelers was required to give Spectrum the benefit of the doubt as to any ambiguity, *see Am. Best*, 168 Wash. 2d at 413, continue to defend under a reservation of rights, and seek a declaratory judgment. *See Truck Ins.*, 147 Wash. 2d at 761.

Travelers also argues that it actually did provide Spectrum with a defense of the breach of contract claim, which was dismissed in January 2010. (Dkt. No. 52 at 20-21.) This argument fails at the outset. First, there is no dispute that Travelers withdrew before the breach of contract claim was dismissed, and that Spectrum was left to defend itself against the claim. Moreover, to the extent that the breach of contract claim was covered by the policy and *not* subject to the sublimit, Travelers' payment of defense expenses on the breach of contract claim displaced payment of expenses for claims that *were* subject to the sublimit. Either way, the critical fact is that Travelers stopped defending Spectrum when it was never clear that the breach of contract claim was (1) not covered under the policy or (2) subject to the sublimit.

### b. Meal and rest break claim.

Spectrum similarly argues that the claim for failure to provide meal and rest breaks was outside the sublimit. The claim was brought under RCW 49.12.010, part of the Industrial Welfare Act, and WAC 296-126-092, which mandates that employees be provided meal and rest periods. Spectrum argues that these provisions do not relate to the payment of wages, and that the break claim therefore was not a wage-and-hour claim. Spectrum further argues that the break

---

and with intent to deprive the employee" of the wages—plainly a more stringent standard than that for breach of contract, and beyond what was alleged in the *Lettic* complaint. The Court is also unconvinced that anything potentially implicating a moral hazard necessarily is subject to the sublimit, absent policy language to that effect.

ORDER
PAGE - 11


claim at least potentially alleged a "failure to create or enforce adequate workplace or employment policies or procedures," which is covered under the policy. (Dkt. No. 19 at 4-5.)

The Court again agrees with Spectrum that it was conceivable that the break claim was covered and not subject to the sublimit. As Ms. Kihlmire-Caudill testified at the Rule 30(b)(6) deposition, WAC 296-126-092 does not relate to the payment of wages. (Dkt. No. 21-1 at 15.) And while the *Lettic* plaintiffs did seek back pay for missed breaks, they also sought injunctive relief: they wanted Spectrum to provide the breaks in the future. (Dkt. No. 21-2 at 19.) Ms. Kihlmire-Caudill further acknowledged that the fact that the plaintiffs sought back pay did not, of itself, convert the break claim to a wage-and-hour claim. (Dkt. No. 21-1 at 16.) Travelers, however, chose to characterize the break claim as one seeking unpaid wages—a conclusion that inured to its own benefit. In defense of this conclusion, Ms. Kihlmire-Caudill testified that "we treated the meal and rest break claims as wage and hour claims because so often the damages sought were wages for the failure to make payments for the time worked." (Dkt. No. 21-1 at 15.) But Travelers' coverage decisions regarding other actions, involving other facts, do not speak to whether the *Lettic* claims were covered or subject to the sublimit. Ultimately, Travelers relied on assumptions about the *Lettic* claims, and in so doing failed to give equal consideration to Spectrum's interests. *See, e.g.*, *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 1000 (W.D. Wash. 2006) (bad faith where insurer relied on assumed exclusions without conducting reasonable investigation).

The Court sees little need to address the OSHA exclusion, as Travelers raised it for the first time in June 2010, having conducted no prior analysis of the applicability of the exclusion, and after having withdrawn its defense of Spectrum. (*See* Dkt. No. 21-1 at 16.) Nonetheless, OSHA does not address meal and rest breaks for workers, and Ms. Kihlmire-Caudill conceded that "reasonable people could differ" as to whether the *Lettic* break claim was similar to an OSHA claim. (Dkt. No. 21-1 at 30.) Thus, even if Travelers had not raised the OSHA exclusion belatedly, it would not have been clear that the break claim was subject to the exclusion.

Remarkably, Travelers argues in its opposition papers that the break claim "does not come within the definition of a 'Wrongful Employment Practice' under the Policy and therefore did not contractually trigger *any* obligation on the part of Travelers." (Dkt. No. 52 at 17 (emphasis in original).) Travelers did not advance that argument in any of its communications with Spectrum. It may not now assert it as a basis for rebutting Spectrum's counterclaim for bad faith refusal to defend. Moreover, the argument is directly at odds with Travelers' approach throughout the underlying dispute, which was to treat the break claim as a wage-and-hour claim that was within the policy but subject to the sublimit. Finally, Ms. Kihlmire-Caudill's testimony on this subject was highly equivocal. (*See* Dkt. No. 21-1 at 15 ("I'm not certain that [the break claim] would be covered by the policy"), 16 ("it's possible that this could be alleged and not meet the definition of a wrongful employment practice"), 25 (same).) This testimony merely reinforces that coverage of the break claim was ambiguous and that Travelers never took steps to resolve that ambiguity before terminating its defense.

### c. CPA claim.

The *Lettic* complaint alleges that Spectrum violated the CPA by, *inter alia*, failing to pay employees what they were owed, preventing them from taking meal and rest breaks, and violating specific provisions of the Washington Administrative Code, including WAC 296-126-092. (Dkt. No. 21-2 at 18.) Spectrum's argument regarding the CPA claim parallels that for the breach of contract and break claims: that the *Lettic* plaintiffs did not allege violations of wage-and-hour laws in support of the CPA claim, but that Travelers nonetheless limited its coverage to the sublimit.

The CPA claim was largely derivative of the other claims, and to the extent that any of the other claims were covered and not subject to the sublimit, so was the CPA claim. Ms. Kihlmire-Caudill acknowledged as much, testifying that there "potentially" was coverage of the CPA claim outside the sublimit, which is why Travelers made the additional payment to Spectrum in August 2011. (Dkt. No. 21-1 at 13.) Travelers had long since ceased defending

Spectrum by that point. Thus, as with the breach of contract and break claims, the CPA claim was conceivably covered outside the sublimit, and Travelers breached its duty to defend when it withdrew in August 2009.

Travelers contends that Spectrum is estopped from arguing that Travelers mischaracterized the CPA claim as a wage-and-hour claim. (Dkt. No. 52 at 22.) It notes that Spectrum moved to dismiss the CPA claim in state court on the grounds that the CPA claim was "entirely dependent on [the] contention that Spectrum violated Washington state wage and hour laws." (*Id.*; Dkt. No. 54-7 at 4.) Washington courts invoke the equitable doctrine of judicial estoppel to preclude a party from "asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Arkison v. Ethan Allen, Inc.*, 160 Wash. 2d 535, 538, 160 P.3d 13 (2007). Here, Travelers had already ceased providing a defense when Spectrum moved to dismiss the CPA claim, and the breach had already occurred. Moreover, Spectrum's positions are not "clearly inconsistent." Its argument before the superior court was that the CPA does not relate to or cover employment disputes, and that the plaintiffs therefore could not allege CPA violations solely for employment matters. (Dkt. No. 54-7.) That does not necessarily mean that all of the allegations in support of the CPA claim were clearly related to wage-and-hour laws for coverage purposes. Finally, the Court agrees that application of judicial estoppel is inappropriate where an insurer causes an insured to make arguments on its own behalf by refusing to provide a defense. *See Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1126 (D. Haw. 2011). As that is what occurred here, the Court declines to invoke the doctrine of judicial estoppel.

Given the foregoing, the Court concludes that Travelers breached its duty to defend the claims for breach of contract, failure to provide meal and rest breaks, and violation of the Consumer Protection Act, and did so in bad faith.

**4. Harm to Spectrum.**

A showing of bad faith gives rise to a rebuttable presumption of harm. *Kirk*, 134 Wash.

2d at 563. The presumption is necessary in order to avoid saddling the insured with the "almost impossible burden of proving that he or she is demonstrably worse off because of the insurer's actions." *Safeco Ins. Co. of America v. Butler*, 118 Wash. 2d 383, 390, 823 P.2d 499 (1992) (citation omitted). The insurer can rebut the presumption by showing by a preponderance of the evidence that its acts did not harm the insured. *Id.* at 394.

Travelers asserts that Spectrum has offered no evidence of harm. That argument appears to invert the standard set forth in *Kirk* and *Butler*. Nonetheless, Spectrum has indeed offered evidence of harm: it incurred more than $500,000 in defense expenses after Travelers' withdrawal. (*See* Davis Declaration, Dkt. No. 20, Exs. B, C.) Although Travelers provided a late payment of $125,000, it based that payment on a "rough estimate" of Spectrum's expenses for the contract and CPA claims. (Dkt. No. 21-1 at 11.) A "rough estimate" does not constitute a showing by a preponderance of the evidence that Spectrum was made whole. The late payment, moreover, did not account for defense expenses related to the break claim. (Dkt. No. 21-1 at 13.) Finally, the fact that Travelers submitted an additional payment two years after it ceased its defense does not compensate Spectrum for having to advance those funds in the first place, or for having to weigh its own defense against its balance sheet. *See Griffin v. Allstate Ins. Co.*, 108 Wash. App. 133, 148 (2001) ("To the extent [the insured] can establish it incurred expenses as a direct result of [the insurer's] breach of contract and bad faith actions, it was harmed.").

The Court therefore concludes that there are no genuine issues of fact as to Spectrum's counterclaim for bad faith refusal to defend, and Spectrum is entitled to summary judgment on that claim. As the remedy for bad faith failure to defend is coverage by estoppel, *Kirk*, 134 Wash. 2d at 564, Travelers is estopped from denying coverage as to the *Lettic* claims for breach of contract, failure to provide meal and rest breaks, and violation of the Consumer Protection Act.

### III. CONCLUSION

For the foregoing reasons, Spectrum's Motion for Partial Summary Judgment (Dkt. No.

19) is GRANTED.

DATED this 31st day of August 2012.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE